**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

TYRONE ALAN GANOE,
          *Defendant-Appellant.*

No. 07-50195

D.C. No.
CR-06-00019-DSF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
July 14, 2008—Pasadena, California

Filed August 15, 2008

Before: Barry G. Silverman, Johnnie B. Rawlinson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Silverman

10733

**COUNSEL**

Karen L. Landau, Oakland, California, for the defendant-appellant.

Thomas P. O'Brien, Christine C. Ewell, and Mark C. Krause, United States Attorney's Office, Los Angeles, California, for the plaintiff-appellee.

---

**OPINION**

SILVERMAN, Circuit Judge:

In this appeal from convictions for receipt and possession of child pornography, we hold today that the district court acted within its discretion in allowing the jury to briefly view a carefully limited number of images that were the subjects of the charged offenses. Ganoe's offer to stipulate that anyone viewing the images would have known that they met the legal definition of child pornography did not render the evidence impermissible, because he refused to also stipulate that the titles of the computer files alone were enough to import knowledge of what they were. We also affirm the denial of Ganoe's motion to suppress evidence obtained by a federal agent using peer-to-peer software. Ganoe installed and used file-sharing software on his computer; he knew or should have known that the folder into which he downloaded files was accessible to others on the peer-to-peer network. We hold that Ganoe lacked an objectively reasonable expectation of privacy in those files. Lastly, we find no error or abuse of discretion in the district court's calculation of Ganoe's sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**The investigation**

On January 5, 2004, Immigration and Customs Enforcement Special Agent Ken Rochford was using LimeWire to

locate people using file-sharing programs to trade child pornography. LimeWire is a file-sharing program that can be downloaded from the internet free of charge; it allows users to search for and share with one another various types of files, including movies and pictures, on the computers of other persons with LimeWire. Once a user downloads the program onto his computer, the user can click on an icon that connects his computer to others on the network. Users can input search terms and receive a list of responsive files available on other computers connected to the network.

Upon observing a file entitled "Baby J Compilation," Rochford downloaded and viewed the movie, confirming that it depicted an adult having sexual intercourse with a very young girl. (The computer forensics expert testified that "BabyJ" is a common term in the world of child pornography, referring to "a specific victim of child exploitation" depicted in a series of pictures and movies.) Rochford used LimeWire's "Browse Host" feature to view all of the files being shared by a particular "Host," thereby discovering four additional file titles that suggested similar content. Rochford downloaded and viewed these files, observing that they too contained footage of children engaged in sexually explicit conduct. Rochford determined that the downloads originated from a computer with a particular IP address, and that the IP address was assigned to Tyrone Ganoe, located at a specified residence in Norwalk, CA.

Agents obtained a search warrant for that address, which was executed on March 9, 2004. Tyrone Ganoe arrived at the residence while the agents were engaged in the search. He spoke with Agent Margaret Condon, who advised him that he was not under arrest but that she would like to ask him a few questions. Ganoe agreed, confirming that he lived at the house with his mother Josephine and his sister Yvette. Condon asked Ganoe if he knew why the agents were there, and he said that he did; he explained that he had been using LimeWire to download music and had inadvertently down-

loaded child pornography. He stated that the "bad stuff" could be found in the "z" folder on the iMac. Upon examination, the "z" folder was found to contain 72 image and movie files suspected to be child pornography.

The day after the search of Ganoe's residence, Agent Condon called Ganoe on his cell phone to inform him that he could retrieve some of the items taken during the search. Ganoe volunteered that he was seeking counseling for his "problem." Agent Condon asked him what he meant, and he stated that he was referring to his habit of viewing child pornography.

**The indictment**

The first superseding indictment charged Ganoe with three counts of knowingly receiving child pornography and one count of knowingly possessing child pornography, all in violation of 18 U.S.C. § 2252A. The first count alleged that Ganoe had received a digital image entitled "babyj Cock in Her.mpg." on or about November 22, 2003. The second count alleged that Ganoe had received a digital image entitled "BabyJ-ButtHump.mpg" on or about December 5, 2003. The third count alleged that Ganoe had received a digital image entitled "BabyJ-Teddy.mpg" on or about January 21, 2004. The fourth count listed 65 different image titles and alleged that Ganoe had possessed at least one on or about March 9, 2004.

**Pre-trial motions**

Prior to trial, Ganoe moved to exclude the images at issue on the grounds that they were inflammatory and unduly prejudicial, offering to stipulate that "the images seized on the computer at the Ganoe family home are child pornography within the meaning of the statute," and that any reasonable person viewing the images would have known that they were child pornography. The government sought more, asking the

defense to stipulate that Ganoe himself "had knowledge that they were, in fact, illegal." Defense counsel refused and the court directed the attorneys to "attempt to agree on a stipulation that might make the introduction of such images unnecessary. Alternatively, counsel should attempt to agree to a representative selection of still photographs and short portions of video clips to be introduced into evidence after the Government presents evidence sufficient for the jury to conclude that defendant saw the images."

At a subsequent hearing on the motion to exclude the images, the district court reviewed the selection of images proposed by the prosecution for viewing by the jury. Defense counsel reiterated that the images were highly inflammatory and argued further that the sequence was very repetitive; defense counsel again asserted that the proffered stipulation "makes the whole issue moot." The district court directed the government to select ten images to show to the jury. The district court also directed the government to investigate whether technology was available to distort the faces of the children depicted in the images. On January 5, 2007, the parties stipulated that the images specified in the indictment were transported in interstate commerce and depicted actual minors engaging in sexually explicit conduct. Despite defense counsel's earlier proffer, this stipulation did not include the provision that any reasonable person would have known that the images were child pornography.

In its written order the district court elaborated on its reasoning. Noting that the government was obligated to prove that Ganoe knew the downloaded images were child pornography and that Ganoe would not so stipulate, the district court reasoned that "the images must be produced so that the jury can determine whether a reasonable person would know of the nature of the images."

The next day, immediately prior to the beginning of trial, defense counsel made another attempt to have the images

excluded, offering to stipulate further that "[a]nyone who sees those images for one second knows that they are child pornography."

The following day the government offered to accept a stipulation that anyone who read the file titles would have known they were downloading child pornography. The defense refused, rejecting the proposition that merely selecting a file for download on the basis of a title was sufficient to constitute knowledge in the absence of a showing that the images were actually viewed. The district court ruled that "although the images obviously are prejudicial, in the context of this case, they are extremely probative. They have been limited. We have inquired of the jury concerning their ability to view those images. We have an instruction that I will give them that the Government proposed, and I am going to allow the images to be shown."

Also prior to trial, the defense moved to suppress the evidence obtained from Ganoe's computer during the execution of the search warrant on the grounds that Rochford's initial search was illegal. The district court denied the motion, reasoning that Ganoe did not have a reasonable expectation of privacy in a computer on to which he had loaded the file-sharing program. Rejecting Ganoe's claim that he wasn't "computer-savvy" enough to have used the disabling feature, the district court concluded that "[h]e knew or should have known that the software might allow others to access his computer."

Ganoe also sought to exclude evidence of the firearms seized at the Ganoe family, including evidence that some of the weapons were not legal to possess. The district court ruled that the evidence was not inextricably intertwined with the charged conduct, and that the admissibility of the evidence would depend on the evidence introduced by Ganoe; the district court instructed that the government was not to introduce the firearm evidence without seeking permission.

**The prosecution's case-in-chief**

At trial Agent Rochford testified about his experience in investigating child pornography offenses and explained how he had downloaded files containing child pornography from an IP address later determined to be associated with Ganoe's computer. Agent Condon testified about the search that was conducted at the Ganoe residence, including Ganoe's statements acknowledging his possession of child pornography, and her subsequent telephone conversation with Ganoe in which he volunteered that he was receiving counseling for his "problem." Bruce Pixley, the government's computer forensics expert, explained how peer-to-peer programs such as LimeWire work and testified about his examination of Ganoe's computer. Pixley said that he found 72 pictures and videos depicting child pornography in a subfolder entitled "z," located within the iTunes folder. Ten of these images, each lasting only a few seconds, were shown to the jury one time. In addition, before the images were played, the district court gave a cautionary instruction that the images were being shown "only to assist you in determining whether the government has met its burden to prove the defendant guilty of all of the elements of the charges against him." The district court cautioned the jurors not to "allow any feelings that you may have regarding these images to affect this determination in any way," and reminded the jurors of their oath to be fair and impartial to both sides.

**The defense**

The defense called Ganoe's sister Yvette, her boyfriend Joseph DiLello, and her friend Rhonda Poston to testify that a man named Ray Rodriguez lived at the Ganoe family home for several months during the fall of 2003 and the winter of 2004, but vanished after Yvette told him that federal agents had seized the computer from the music room. DiLello testified that he had personally observed Rodriguez search for and download child pornography on to the computer, and that he

had never seen Ganoe on the computer. The defense also called a number of witnesses to provide alibis for Ganoe on the dates and times during which the child pornography was downloaded.

**Prosecution's rebuttal case**

In rebuttal the prosecution called Coraly Serrano, Ganoe's ex-girlfriend. Serrano testified that Ganoe asked her to assist him in the fabrication of an alibi and that the Ganoe family had invented the existence of Ray Rodriguez. At the conclusion of the direct examination, defense counsel asked to defer cross-examination, stating that Serrano's testimony was "nothing we have ever heard before" and that the defense needed "an opportunity to look into it further so that we can address the witness appropriately." The court denied the request, and Serrano was cross-examined about her feelings of anger towards Ganoe as a result of their break-up. During the cross-examination of Serrano, defense counsel renewed the request for a continuance to allow for additional preparation, which the district court denied.

The government also recalled Pixley, who testified that whoever was using the computer at the time the child pornography was downloaded had also accessed Ganoe's PayPal account, used Ganoe's American Express card, logged onto his email account, and sent emails to people associated with Ganoe, suggesting that it must have been Ganoe himself.

**Defense surrebuttal**

After the conclusion of the prosecution's case in rebuttal, defense counsel sought to present surrebuttal, asking to recall Yvette, DiLello, and Poston to address the accusation of fabrication. The district court agreed to "very limited" questioning to allow these witnesses to address the allegations that they had fabricated the existence of Rodriguez. Joseph DiLello testified that a list of passwords and user names for various

password-protected websites was kept next to the computer, suggesting that anyone using the computer could have accessed these sites. DiLello was cross-examined about the password list and other aspects of his testimony, and was then excused by the judge, at which point defense counsel sought to ask "one follow-up question." The district court refused; at sidebar, defense counsel explained that she wanted DiLello to identify the paper containing the password list and to have the list introduced into evidence. The district court denied the request on the grounds that counsel had the paper during direct examination.

Defense counsel also sought to call Coraly Serrano back as an adverse witness to probe more extensively Serrano's "biases and motives." The district court viewed this proposed line of questioning as outside the purview of proper surrebuttal, noting that the defense had been "well aware" of Serrano's existence prior to her appearance on the prosecution's witness list. After an extended colloquy regarding the scope of questioning that would be allowed, Serrano took the stand and was asked about her relationship with the Ganoe family, her blog postings about Ganoe and his arrest, and a number of other topics. Defense counsel began to question Serrano about her employment history, triggering a relevance objection from the prosecution. At sidebar, defense counsel explained that she was preparing to ask the witness about prior instances of dishonesty, specifically that Serrano had undergone breast augmentation surgery and charged it to the credit card of her former employer; similarly, that while working for a finance company Serrano had purchased shoes using stolen credit card numbers from the company's customers. Commenting that "[i]t doesn't really have anything to do with this case," the district court ruled that such questioning would not be allowed.

**Verdict, sentencing, and appeal**

Ganoe was convicted on counts one, two, and four, and was acquitted on count three. He was sentenced to 96 months in

prison, a $15,000 fine, and five years of supervised release. He timely appealed and raises the following claims of error.

## II.  DISCUSSION

**A.  The district court did not abuse its discretion in allowing the jury to view a carefully tailored selection of the child pornography images charged in the indictment**.

Ganoe contends that the images of child pornography shown to the jury were unfairly prejudicial, lacking in probative value, and should have been excluded under Federal Rule of Evidence 403. Reviewing for abuse of discretion, *see United States v. Merino-Balderrama*, 146 F.3d 758, 761 (9th Cir. 1998), we find none.

[1] Federal rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." As to the danger of unfair prejudice, Ganoe observes that the images at issue here were "unusually inflammatory," depicting children as young as four years old being subjected to anal and vaginal intercourse with adult males. Ganoe asserts that the probative value of the images was eliminated by his offer to stipulate that the images represented actual children engaged in sexual conduct and that anyone seeing the images even for a moment would know that they were child pornography. We disagree.

[2] To begin, Ganoe's proffered stipulation was incomplete, because he refused to stipulate that the file titles alone would convey to a reasonable user that the files contained child pornography; moreover, some aspects of his defense suggested that one could mistakenly download such files thinking they were adult pornography or otherwise legal. This left the government with the obligation to prove that Ganoe was aware of the content of the images. As to this burden Ganoe's proffered stipulation was silent, whereas the images

— in conjunction with the rest of the forensic evidence — said a great deal. Of the child pornography files charged in the indictment — including the subset shown to the jury — many had titles that were excruciatingly suggestive of the content ("babyj Cock in Her"), while other titles could arguably be said to be ambiguous as to either the depiction of sexual conduct ("BabyJ Teddy") or the age of participants ("Vicky69"). Every single child pornography file found on Ganoe's computer, descriptively titled or not, was placed in the "z" folder, and the "z" folder contained nothing but child pornography. Pixley explained that this categorization had to have been achieved manually, by "user intervention" rather than by virtue of a default setting.

[3] The fact that the vast majority of the titles accurately described the nature of the corresponding image was relevant to rebut the defense's suggestion that one could download the files without intending to obtain child pornography. The fact that even those files that were not explicitly titled *also* turned out to contain child pornography and were *likewise* placed in the "z" folder strongly suggests that the images had to have been viewed in order to be categorized. The jury had to see the images to be able to draw these conclusions. Thus the images themselves, published to the jury as part of the government's detailed and comprehensive forensic evidence regarding the downloading, viewing, categorizing, and storing of the files, were highly probative of the state of mind with which the files were received and possessed. Seen in this context we think it plain that Ganoe's proffered stipulation simply did not "supply evidentiary value at least equivalent to what the Government's own evidence carried." *See Old Chief v. United States*, 519 U.S. 172, 186 (1997).

[4] In weighing the probative value of the images against the danger of unfair prejudice, we emphasize that each of the clips was derived from files charged in the indictment; the images shown to the jury were thus not extrinsic to the crime charged "but rather a part of the actual pornography pos-

sessed." *See United States v. Dodds*, 347 F.3d 893, 898 (11th Cir. 2003). Even more importantly, for every image shown to the jury there was forensic evidence that the files had actually been opened and viewed after downloading. This is what makes this case distinguishable from *United States v. Merino-Balderrama*, in which we reversed a conviction for possession of child pornography where the district court erroneously allowed the government to show excerpts from child pornography films found in the trunk of the defendant's car. *See* 146 F.3d at 760. Seeking to keep the films from the jury's view, the defendant had offered to stipulate that the films were child pornography and had traveled in interstate commerce. *Id.* at 761. In *Merino*, however, it had been undisputed that the defendant never saw the actual films — only the box covers, which depicted images that turned out to be stills taken from the movies within. This is a crucial distinction, because in conducting the Rule 403 analysis, we emphasized that the films, which had not been viewed by the defendant, were considerably less probative to scienter than the box covers, which the defendant had seen. *Id.* at 761-63. In this case, the images themselves were probative of scienter in a way that was simply absent in *Merino-Balderrama*.

**[5]** As the First Circuit recently observed, "The trial judge's job is to avoid unfair prejudice. The court is not required to scrub the trial clean of all evidence that may have an emotional impact." *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) (affirming the admission of 12 photographs and 10 video clips depicting child pornography). Here the record reflects that the district court used just about every tool at its disposal to minimize the inflammatory nature of the images. The district court limited the government to ten clips, each one lasting a few seconds, with a total duration of under one minute. The images were played only once. The district court gave two cautionary instructions, directing the jury to view the images in an impartial and unbiased manner. All of this was after careful voir dire on the subject during jury selection. Indeed, the jury's verdict demonstrates quite com-

pellingly that the district court succeeded in avoiding unfair prejudice. The jury acquitted Ganoe on count three of the superseding indictment that charged him with receiving a digital file entitled "BabyJ-Teddy.mpg," in spite of the fact that a portion of that very film was shown to the jury. The district court properly exercised its discretion in connection with the admission of the images.

## B. Any abuse of discretion in the district court's limitation on the questioning of Coraly Serrano was harmless.

[6] Ganoe next asserts that his Sixth Amendment right to confrontation was violated by the district court's refusal to allow him to question Serrano during surrebuttal about whether she had used the credit cards of her former employer and former customers for personal gain. Because Serrano had already been subjected to robust cross-examination about her biases and motivations to lie and because it arises in the context of surrebuttal, we view this ruling as a limitation on the scope of questioning regarding Serrano's credibility, and we therefore review the ruling for abuse of discretion. *See United States v. Larson*, 495 F.3d 1094, 1101-02 (9th Cir. 2007) (en banc).

[7] The next step is to consider whether the ruling violated Ganoe's right "to be confronted with the witnesses against him," which includes "the right of effective cross-examination." *Id.* at 1102. We have identified three factors to consider in determining whether a defendant's right to effective cross-examination was violated: "(1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *Id.* at 1103. We note that we consider the excluded evidence to be relevant, as it tends to reflect Serrano's character for truthfulness and thus sheds

light on the truthfulness of her testimony. *See* 1 McCormick on Evidence 150 (5th ed. 1999) ("The fact that the witness previously engaged in deception tends to show the witness has a character trait for untruthfulness, and in turn the existence of that character trait at least slightly increases the probability that the witness lied during his testimony."). Because the proposed line of questioning was offered as evidence of Serrano's character for untruthfulness, we do not quite understand the district court's comment that "it doesn't really have anything to do with this case."[1] As to whether the jury had sufficient information to assess Serrano's credibility, we note that the jury was presented with voluminous evidence that Serrano had made threats against Ganoe, was still very angry with him over their break-up, and had made prior statements inconsistent with her testimony. Ultimately, however, we need not determine whether this was adequate to satisfy the Sixth Amendment: even if Ganoe did suffer a Confrontation Clause violation, we conclude that any error was harmless beyond a reasonable doubt. *See Larson*, 495 F.3d at 1107. Although the trial was certainly hard fought, the evidence of Ganoe's guilt was overwhelming. Ganoe made statements to Condon acknowledging that there were child pornography files on his computer and explaining that he had placed all the "bad stuff" in the "z" folder. During the search he characterized the downloading as inadvertent, but the next day he informed her that he was seeking counseling for his "problem." The government also introduced substantial forensic evidence to demonstrate that it was Ganoe who knowingly received or possessed child pornography, including evidence that most of the files were downloaded while Ganoe accessed password-protected websites such as his online bank account; that all of the files had been opened and viewed after downloading; and that the categorized placement of the child por-

---

[1]The government suggested during oral argument that the district court's ruling can be understood as a determination that defense counsel sought to impeach Serrano on a collateral matter and without sufficient factual foundation.

nography files into the "z" folder would have to have been done manually by the user. In light of this evidence, we are unable to entertain a reasonable doubt that the outcome of the trial would have been different had Ganoe been permitted to ask Serrano about her misuse of employer and customer credit cards.

## C. The district court did not abuse its discretion in excluding the list of passwords.

The defense recalled Joseph DiLello in its surrebuttal case to counter forensic expert Pixley's testimony that whoever was using the computer at the time the child pornography was downloaded also accessed Ganoe's PayPal account, used Ganoe's American Express card, logged onto his email account, and sent emails to people associated with Ganoe. During his surrebuttal testimony, DiLello explained that there was a list of usernames and passwords "kept right next to the iMac computer." After he was cross-examined, defense counsel sought an opportunity to have DiLello identify the password list, and the district court refused. Ganoe challenges the district court's ruling, a decision reviewed for abuse of discretion. *See United States v. Blackstone*, 56 F.3d 1143, 1145 (9th Cir. 1995).

[8] Ganoe's own argument reveals why there was no abuse of discretion. In explaining why the list should have been admitted, he states that "DiLello would have testified the list was visible and physically close to the iMac computer and was used to access the internet accounts by persons other than Tyrone Ganoe." The problem is that DiLello *did* testify that the password list "was kept right next to the iMac computer." When asked whether anyone using the computer could have logged on to the password-protected accounts by using the passwords on the list, DiLello answered "[i]f they so wished they could, yes." This was made perfectly clear without the paper upon which the passwords were written. The actual list may have added a measure of credibility to DiLello's testi-

mony in the jury's eyes, but it was cumulative, and the district court did not abuse its discretion by excluding it.

**D. The district court did not abuse its discretion in admitting evidence that firearms were seized from Ganoe's home.**

Ganoe objects to the admission of evidence that numerous firearms, including assault rifles, were seized from his home during the execution of the search warrant. Agent Murphy, who assisted Agent Condon, testified that during the search Ganoe was asked if there were firearms in the home. Ganoe directed the agents to the "music room" attached to the garage — the same room in which the computer was located. Murphy testified that within the room there were two separate cases in which assault rifles were secured, and that agents also found a "substantial number" of "legal-to-possess" hunting rifles, shotguns, and possibly antique weapons throughout the rest of the house.

[9] Ganoe contends that such evidence was prejudicial and "irrelevant to charges that a defendant, using a computer, received or possessed images of child pornography." The district court did not abuse its discretion in ruling to the contrary. The evidence was relevant to demonstrate Ganoe's ownership and control over the music room and the items found in it. We reject Ganoe's contention that the firearms were cumulative for that purpose due to previous testimony that he kept his guitars and their cases in the music room. Because assault rifles are dangerous and heavily regulated, it is unlikely that visitors would have unfettered access to the room in which they were kept. Furthermore, the district court instructed the jury that evidence concerning the firearms could be considered "only as it bears on the defendant's knowledge, identity, or absence of mistake or accident in the commission of the charged crimes," and not for any other purpose. The district court did not abuse its discretion by allowing the govern-

ment's introduction of firearms evidence to rebut the Ray Rodriguez defense.

**E.   There is no cumulative error**.

Ganoe urges us to conclude that the cumulative effect of the four evidentiary rulings discussed above deprived him of a fair trial. As we have explained, we discern no error in the district court's decisions regarding the child pornography, the password list, and the firearms evidence. As we have also explained, any error in the district court's refusal to allow Serrano to be questioned about prior instances of dishonesty was harmless beyond a reasonable doubt in light of the overwhelming evidence of Ganoe's guilt. There is no cumulative error warranting reversal. *Cf. United States v. Wallace*, 848 F.2d 1464, 1475 (9th Cir. 1988).

**F.   The district court correctly denied the motion to suppress evidence obtained from Ganoe's computer.**

**[10]** Ganoe asserts that when Agent Rochford used LimeWire to access the child pornography files on his computer, Rochford conducted a warrantless search that was illegal under the Fourth Amendment. The district court denied Ganoe's motion to suppress evidence obtained from Rochford's search on the grounds that having installed file sharing software on his computer, Ganoe "knew or should have known that the software might allow others to access his computer" and thus lacked a reasonable expectation of privacy in the files stored on his computer. We agree and affirm the denial of the motion to suppress.

Although as a general matter an individual has an objectively reasonable expectation of privacy in his personal computer, *see United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir. 2007), we fail to see how this expectation can survive Ganoe's decision to install and use file-sharing software, thereby opening his computer to anyone else with the same

freely available program. The crux of Ganoe's argument is that he simply did not know that others would be able to access files stored on his own computer. But he knew he had file-sharing software on his computer; indeed, he admitted that he used it — he says to get music. Moreover, he was explicitly warned before completing the installation that the folder into which files are downloaded would be shared with other users in the peer-to-peer network. Ganoe thus opened up his download folder to the world, including Agent Rochford. To argue that Ganoe lacked the technical savvy or good sense to configure LimeWire to prevent access to his pornography files is like saying that he did not know enough to close his drapes. Having failed to demonstrate an expectation of privacy that society is prepared to accept as reasonable, Ganoe cannot invoke the protections of the Fourth Amendment. *See United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004).

## G.    Sentencing contentions

In conducting its sentencing analysis the district court used a base offense level of 17, pursuant to the 2003 version of U.S.S.G. § 2G2.2 . This sentencing guideline applies to "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic." Ganoe asserts that the district court should have applied U.S.S.G. § 2G2.4 , which is titled "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct" and provides a base offense level of 15. The essence of Ganoe's position is that his offense was possessory in nature, lacking the intent or conduct associated with trafficking.[2]

---

[2]This view was shared by the probation officer, who calculated the recommended sentence using U.S.S.G. § 2G2.4.

**[11]** The problem with this contention is that the statutory index for the 2003 sentencing guidelines, under which Ganoe was sentenced, allows the district court to apply either § 2G2.2 or § 2G2.4 to violations of 18 U.S.C. § 2252A. The index instructs the district court to use the guideline "most appropriate for the offense conduct charged in the count of which the defendant was convicted." The district court did so, beginning with the observation that both the statute and the guidelines present two categories of conduct — simple possession and "everything else." Noting that Ganoe was convicted of two counts of receiving child pornography, the district court determined that this took him out of the realm of simple possession and into the world of § 2G2.2 which applies to receiving and a host of other activities, even though "[s]imple receiving is likely the least serious of these various charges." The district court did not err in its interpretation of the guidelines or abuse its discretion in applying § 2G2.2 to Ganoe's conduct. *See United States v. Rising Sun*, 522 F.3d 989, 993 (9th Cir. 2008).

Nor are we able to identify clear error in the district court's imposition of a $15,000 fine, as it is the defendant's burden to establish that he is unable to pay. *See United States v. Reardon*, 349 F.3d 608, 617 (9th Cir. 2003). That there may be uncertainty in the record about Ganoe's ability to pay reflects that Ganoe failed to carry that burden.

The judgment of the district court is therefore AFFIRMED.