340 P.3d 387

**The STATE of Arizona, Appellee,**

v.

**Rick E. WELCH, Appellant.**

**No. 2 CA–CR 2013–0492.**

Court of Appeals of Arizona,
Division 2.

Nov. 14, 2014.

Thomas C. Horne, Arizona Attorney General, Joseph T. Maziarz, Section Chief Counsel, Phoenix By Amy Pignatella Cain, Assistant Attorney General, Tucson, Counsel for Appellee.

D. Jesse Smith, Tucson Richard C. Bock, Tucson, Co-counsel for Appellant.

Presiding Judge KELLY authored the opinion of the Court, in which Judge HOWARD and Judge VASQUEZ concurred.

## OPINION

KELLY, Presiding Judge.

¶ 1 Rick Welch appeals his convictions and sentences for five counts of sexual exploitation of a minor under the age of fifteen. He argues the trial court erred by denying his motion to suppress evidence found on his computer, declining to grant a new trial based on juror misconduct, denying his motion for a mistrial based on a detective's testimony, and denying his request for a third-party-culpability jury instruction. He further argues his sentence was "clearly excessive," in violation of the Arizona and United States constitutions. For the following reasons, we affirm.

### Factual and Procedural Background

¶ 2 We view the evidence in the light most favorable to upholding Welch's convictions and sentences. *See State v. Gay*, 214 Ariz. 214, ¶ 2, 150 P.3d 787, 790 (App.2007). In December 2010, Tucson Police Department Detectives Dan Barry and Steve Sussen, as part of a police training seminar, found "files of interest"—images or videos potentially related to child pornography—while browsing a shared computer network to which Welch belonged. They obtained a search warrant and seized Welch's computer, modem, external hard drive, cell phone, and computer discs (CDs). The seized items contained graphic images of child pornography.

¶ 3 Welch was indicted on twenty counts of sexual exploitation of a minor under the age of fifteen, all class two felonies. All counts were alleged to be dangerous crimes against children. Following a six-day trial, a jury convicted Welch of five of the counts and determined the state had proved beyond a reasonable doubt that the offenses were dangerous crimes against children. The trial court sentenced him to consecutive, minimum prison terms of ten years for each count. Welch timely appealed.

### Discussion

#### Motion to Suppress

¶ 4 Welch first argues the trial court erred by denying his motion to suppress evidence obtained from his computer without a warrant, claiming its acquisition violated his rights under the United States and Arizona constitutions. We review the court's ruling on a motion to suppress for an abuse of discretion. *State v. Jacot*, 235 Ariz. 224, ¶ 9,

330 P.3d 981, 984 (App.2014). We defer to the court's factual findings, *id.*, but review de novo its legal conclusions, *State v. Newell,* 212 Ariz. 389, ¶ 27, 132 P.3d 833, 841 (2006). We will not disturb the court's ruling " 'absent a clear abuse of its considerable discretion.' " *State v. Davis,* 205 Ariz. 174, ¶ 23, 68 P.3d 127, 131 (App.2002), *quoting State v. Alatorre,* 191 Ariz. 208, ¶ 7, 953 P.2d 1261, 1264 (App.1998). When reviewing the denial of a motion to suppress, we consider only the evidence presented at the suppression hearing and view it in the light most favorable to upholding the court's ruling. *State v. Caraveo,* 222 Ariz. 228, n. 1, 213 P.3d 377, 378 n. 1 (App.2009).

¶ 5 At the hearing, Sussen testified that he and Barry had detected files on Welch's computer while being trained to conduct investigations into possible child pornography. As part of their training, the detectives browsed peer-to-peer file sharing networks, where people on the network could request, access, and share files through direct connections to other computers connected to the network. Using the images' secure hash algorithm values, or "SHA values," which are essentially "digital fingerprint[s]" for each image, the detectives learned that Welch's file list—holding over a thousand files—contained eleven "files of interest," meaning they were "associated with child pornography." After serving a search warrant or subpoena on the internet provider, the detectives determined the internet protocol (IP) address for the computer containing the files was associated with Welch's residence.

¶ 6 Welch argued to the trial court that the officers had conducted a warrantless search into his computer—to which Welch had a "reasonable expectation of privacy"—and "used what they found to get the search warrant in this case," which is a "transparent violation of the Fourth Amendment." He characterized the initial investigation as an "electronic intrusion into his house by the police without a warrant" and stated the electronic search was equivalent to physically entering his personal computer to obtain the files. But, in response to the court's question of whether a peer-to-peer network "kind of puts it out there for anybody that wants to see it," Welch responded in the affirmative. The court denied Welch's motion to suppress the files, stating that Welch had waived his expectation of privacy by using "a shared file index that anybody could access."

¶ 7 On appeal, Welch maintains that " 'browsing files' on a person's computer contained within[ ] the four walls of their home requires a warrant." He further insists that because he "had set his computer so others could not download files from his computer" and "his identity and that of his computer and it[s] location was not disclosed to the public," he had a reasonable expectation of privacy in its contents.[1] The detectives, he urges, "should have sought and obtained a warrant prior to 'browsing [his] files' " and using that information to obtain a search warrant. Welch argues that the "warrantless intrusion into [his] computer violated the 4th and 14th Amendments" to the constitution "as well as Article II Section 8 of the Arizona Constitution."

■■■ ¶ 8 The Fourth Amendment and its Arizona counterpart protect against unreasonable searches and seizures, and generally require "suppression at trial of any evidence directly or indirectly gained as a result of the violation." *State v. Allen,* 216 Ariz. 320, ¶ 9, 166 P.3d 111, 114 (App.2007); *see also Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A "search" under the Fourth Amendment occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *accord State v. Olm,* 223 Ariz. 429, ¶ 5, 224 P.3d 245,

---

1. Welch has provided no authority for the proposition that internet usage conducted through identifying markers—such as the user's unique IP address—preserve one's expectation of privacy. As Detective Barry testified, "every device that connects to the Internet is assigned an Internet protocol address" that internet providers—such as Cox Communications or Comcast—assign to their customers in order to identify them and verify their status as paying customers. Welch did not argue—either below or on appeal—that he had any expectation of confidentiality from such a provider, and we conclude that any alleged expectation of privacy would be unreasonable.

247 (App.2010). When "the suspect has a reasonable expectation of privacy in the place or the item searched," a warrant generally is required. *State v. Blakley*, 226 Ariz. 25, ¶ 6, 243 P.3d 628, 630 (App.2010), *citing Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652. We first must determine whether Welch had a reasonable expectation of privacy in his shared computer files. We conclude he did not.

¶ 9 In *United States v. Ganoe*, 538 F.3d 1117 (9th Cir.2008), the court determined the defendant lacked a reasonable expectation of privacy in the downloaded files stored on his computer via file-sharing software. Like Welch, Ganoe argued that police had conducted an illegal, warrantless search of his computer by using his file sharing program to access child pornography files on his computer. *Id.* at 1127. The court held that although an individual generally has "an objectively reasonable expectation of privacy in his personal computer," it did not agree that this "expectation can survive Ganoe's decision to install and use file-sharing software, thereby opening his computer to anyone else with the same freely available program." *Id., citing United States v. Heckenkamp*, 482 F.3d 1142, 1146 (9th Cir.2007). Because Ganoe knew he had file sharing software on his computer, and knew his files would be shared with other users of the peer-to-peer network, he had "failed to demonstrate an expectation of privacy that society is prepared to accept as reasonable" and therefore could not invoke Fourth Amendment protections. *Id.*

¶ 10 We find this reasoning applicable here. Sussen testified that to detect the files of interest on the shared network, network users merely had to conduct a key-word search to find a list of potential hosts for a file and then connect directly to that computer to view the file. He stated the files on Welch's computer were available to "[p]otentially anyone using his network" and that he "simply looked at that folder" to get a "list of his files." When asked whether "a random

member of the public searching on the [peer-to-peer] network on the same date and time" could have viewed Welch's shared folders, Sussen replied, "That potential is there, yes, if they search for that file name." Sussen further testified that peer-to-peer network users are informed of

> the number of times [they will] be sharing this folder. So it's not a surprise when you have a shared folder and sharing files. And whatever is in that share[d] folder is visible to anyone on the ... network. So if you're looking for a particular key word, and you have a file that matches that, it can show up to anybody out there.

¶ 11 Sussen thus testified Welch necessarily was aware of the file sharing software on his computer and knew that others on the network would be able to view his files. We therefore conclude that Welch, by knowingly using a file sharing network, maintained no reasonable expectation of privacy in the files accessible on that network. The trial court did not err by denying his motion to suppress evidence obtained from his computer pursuant to the search warrant.[2]

**Juror Misconduct**

¶ 12 Welch next contends the trial court should have granted his motion for a new trial after jurors improperly considered extrinsic evidence going "to the heart of the defense case." After his trial, Welch filed a motion for a new trial pursuant to Rule 24.1(c)(3), Ariz. R.Crim. P., alleging jury misconduct. He attached to his motion a letter from juror J.F. stating that while she "stand[s] by the jury's verdict," she had concerns about "a jury member looking up info about the case at home." In her letter, J.F. wrote:

> In the jury room, one of the jury members stated that he had looked up weather data to determine if Mr. Welch could have been home on the date the child pornography was viewed. There were storms the previ-

2. Welch also claims on appeal that the police investigation into his computer was criminal trespass pursuant to A.R.S. §§ 13–1501 through 13–1504. He did not raise this argument before the trial court, however, and it is therefore deemed waived. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19–20, 115 P.3d 601, 607 (2005)

(failure to raise claim in trial court constitutes forfeiture of claim absent fundamental and prejudicial error); *State v. Moreno–Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App.2008) (failure to allege fundamental error waives claim on appeal).

ous day and therefore it was likely that Mr. Welch did not go to work. This data reinforced the idea that Mr. Welch was the viewer of the child pornography. I believe that this broke the admonition.

J.F. concluded she thought "the court should be aware of these issues" but did not know if they "affect the validity of [the jury's] verdict." Welch also attached a weather report to his motion.

¶ 13 At a status conference, the trial court and both attorneys questioned J.F. J.F. stated that during jury deliberations, juror M.A. indicated he had accessed the weather report when the jurors were discussing "the possibility of [Welch's son] being the person at home" when the child pornography was accessed. M.A. "brought up looking up the weather at that point," noting "it had been stormy the previous day [making it] unlikely that [Welch] would have went to work ... since he's a pool cleaning guy." J.F. stated this information was shared early in the deliberations, and "was one of the very first things that we mentioned in the jury room." She recalled the weather report showing it "to be stormy in Tucson" on October 22 but later said the weather report was for October 21, indicating M.A. had shown her the report for a "bad weather weekend." J.F. recalled one other juror hearing this information, but stated no one had questioned M.A. She stated the weather report "was not brought up" when the jury considered the counts based on images found on CDs seized from Welch's home.

¶ 14 The parties questioned M.A. at a subsequent status conference. M.A. stated he had "looked at the history of rain days" for 2010, which came up when the jury discussed whether it might have been raining on the date Welch was said to have been looking at child pornography; "[b]ut at that point, the way it went through deliberations, it made no difference whatsoever." M.A. said he brought up the weather report "very early on," before the jury "got into the first count" when they "were just passing evidence around." M.A. stated he showed the weather report "to one other" juror, but did not discuss the information with everyone else.

M.A. said the report was for October 21 and that it showed "there was no rain that day."

¶ 15 The parties then questioned a third juror, L.P., who stated he did not remember what M.A. had said about the weather. Although L.P. heard the topic of weather mentioned and thought it came up before any verdicts were reached, he recalled other jurors saying it was improper to look up extrinsic information. The trial court declined Welch's request to question additional jurors.

¶ 16 After additional briefing, the trial court denied Welch's motion for a new trial. It noted that

each juror ... indicated that the evidence did not influence their decision ... most likely because the computer activity around the images in those counts included internet activity where it showed that hotmail accounts were logged into using [Welch's] login, online banking was being conducted with [Welch's] bank, passwords were being used that were attributed to [Welch's] computer and various other sites to which [Welch] belonged, and Facebook activity occurred where people's pictures were viewed ... who, coincidentally were in [Welch's] contact list as downloaded from his personal cell phone. Further, as one of the jurors noted, the weather on October 22nd was in direct relation to the third-person culpability defense, of which she said an initial informal pool of the jurors at the start of their deliberations revealed no one believed.

The court further noted the jurors had "differing views of [the evidence's] value, primarily because they had two different interpretations of what that evidence actually reflected" and that all jurors questioned had agreed the evidence did not affect the deliberations. The court concluded "beyond a reasonable doubt that the extrinsic evidence introduced did not improperly influence the verdict" and that "no prejudice has been shown ... [or could be] fairly presumed from the facts."

¶ 17 Welch maintains "the actual weather on October 22, 2010 was critical" because three of the counts of which he was convicted—and possibly the other two—stemmed from activity on that date. He

argues that jurors "bringing up extrinsic evidence that it was wet and stormy . . . was incredibly prejudicial" and violated his right to trial by impartial jurors. We review the denial of a motion for a new trial based on alleged juror misconduct for an abuse of discretion. *State v. Manuel*, 229 Ariz. 1, ¶ 40, 270 P.3d 828, 835 (2011).

¶ 18 Juror misconduct requires a new trial only if the defendant shows actual prejudice or if we can fairly presume prejudice from the facts. *State v. Lehr*, 227 Ariz. 140, ¶ 49, 254 P.3d 379, 390 (2011). To the extent the misconduct results in the jury receiving and considering extrinsic evidence, "the defendant is entitled to a new trial unless the appellate court can conclude beyond a reasonable doubt that the extraneous information did not contribute to the verdict." *State v. Glover*, 159 Ariz. 291, 294, 767 P.2d 12, 15 (1988); Ariz. R. Crim. P. 24.1(c)(3)(i). Although the jury received improper extrinsic evidence, we conclude beyond a reasonable doubt that Welch was not prejudiced.

¶ 19 The weather report came up in the context of the jurors' discussion about whether Welch's son could have been the person viewing child pornography on the computer that day. The questioned jurors indicated that no one had believed a third person committed the acts, making it unlikely the weather report negatively affected the deliberations. J.F. noted the jury had expressed a "general indication of [Welch's] guilt or not" at the time the report was shared. Only a few members of the jury heard the report and it was brought up only once very early in the deliberations. Discussion of the report ended quickly when another juror reminded M.A. of the admonition and it was not brought up or discussed again during deliberations. Additionally, none of the questioned jurors indicated the weather report had affected the verdict, and each juror had disparate recollections about the substance of the report. J.F. thought it showed "bad weather" and storms on October 21 and 22; M.A.—after incorrectly remembering he had looked at weather reports from 2011—thought the report was dated October 21 and showed no precipitation. L.P. remembered

M.A. mentioning the weather, but did not "remember the specifics of exactly what he said." The trial court did not abuse its discretion by finding beyond a reasonable doubt that the weather report did not contribute to, or improperly influence, the jury's verdicts.

**Testimony Regarding 'Ultimate Issue' in Case**

¶ 20 Welch argues the trial court erred by denying his motion for mistrial after an officer in the case testified as to an "ultimate issue" in his case. The decision whether to grant a mistrial is "a matter left to the sound discretion of the trial court and, absent an abuse of discretion, its decision will not be disturbed." *State v. Ferguson*, 149 Ariz. 200, 211, 717 P.2d 879, 890 (1986). Similarly, we review for an abuse of discretion the court's evidentiary rulings. *State v. Davolt*, 207 Ariz. 191, ¶ 60, 84 P.3d 456, 473 (2004).

¶ 21 When determining whether a mistrial is warranted, we look to " '(1) whether the jury has heard what it should not hear, and (2) the probability that what it heard influenced [it].' " *State v. Miller*, 234 Ariz. 31, ¶ 25, 316 P.3d 1219, 1228 (2013), *quoting State v. Laird*, 186 Ariz. 203, 207, 920 P.2d 769, 773 (1996) (alteration in *Miller* ). "[B]ecause the trial judge is in the best position to assess the impact of a witness's statements on the jury, we defer to the trial judge's discretionary determination." *State v. Dann*, 205 Ariz. 557, ¶ 43, 74 P.3d 231, 244 (2003). "[D]eclaration of a mistrial is the most dramatic remedy for a trial error and should be granted only if the interests of justice will be thwarted otherwise." *State v. Roque*, 213 Ariz. 193, ¶ 131, 141 P.3d 368, 399 (2006). We will not reverse a trial court's denial of a mistrial "unless there is a 'reasonable probability that the verdict would have been different had the [improper] evidence not been admitted.' " *Dann*, 205 Ariz. 557, ¶ 44, 74 P.3d at 244, *quoting State v. Hoskins*, 199 Ariz. 127, ¶ 57, 14 P.3d 997, 1013 (2000).

¶ 22 On the first day of trial, Barry testified about having found files of interest on Welch's computer via his search of the peer-to-peer network. At the conclusion of his testimony, the jury asked Barry, "If you

know, is there any way to prevent the download of child porn[ography] onto [one's] computer?" Barry responded, "Let me think about that question. I'm not sure if it makes sense. Is there any way to prevent the downloading? It's a deliberate act to put that file on your computer. Somebody has to download it and put it on there." Welch objected to Barry's statement and, at a bench conference, claimed Barry's opinion was a comment on "the ultimate issue of this case." The state responded it believed Barry's answer was "an accurate answer to the question" because downloading a file "requires user action." The trial court denied Welch's motion for a mistrial.

¶ 23 Welch maintains that Barry's response went beyond "a mere explanation of facts which tend to support a jury finding of the ultimate issue" into a "forbidden opinion on the 'ultimate legal issue.'" His defense was that he had no knowledge of child pornography on his computer or on the discs and Barry's comments therefore amounted to "an expert's opinion that [Welch] deliberately downloaded child pornography." He claims the trial court abused its discretion by denying his motion for mistrial and urges us to reverse his convictions and remand for a new trial.

¶ 24 Expert testimony is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue." Ariz. R. Evid. 702(a). An expert may testify to an opinion that "embraces an ultimate issue" to be decided by the trier of fact if the testimony is otherwise admissible, but a witness is not permitted to tell the jury how to decide a case. Ariz. R. Evid. 704(a) & cmt. An expert witness also is prohibited from testifying "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged." Ariz. R. Evid. 704(b).

¶ 25 Welch argues that Barry's testimony informed the jury that Welch knowingly downloaded child pornography, a conclusion regarding a "hotly contested" issue in the case. But Barry did not state that Welch himself had downloaded the files; rather, he testified that downloading such files required that "[s]omebody" take deliberate steps to

put child pornography on a computer. Rather than being a comment on Welch's state of mind, Barry's statement informed the jury that internet material could not be downloaded without an operator's affirmative action— a factual assertion which would assist it in making a determination regarding whether Welch had, in fact, downloaded the files. *See* Ariz. R. Evid. 702(a). Additionally, the trial court permitted "follow-up question[s]" from Welch, mitigating any potentially prejudicial effect from Barry's statement. Because Barry's testimony did not address an ultimate issue in the case, we conclude the court did not err by denying Welch's motion for a mistrial.

**Third–Party–Culpability Instruction**

¶ 26 Welch argues the trial court erred by denying his request to instruct the jury on third-party culpability. We review the court's denial of a requested jury instruction for an abuse of discretion, *State v. Musgrove*, 223 Ariz. 164, ¶ 5, 221 P.3d 43, 46 (App.2009), and will not reverse its decision "absent a clear abuse of that discretion and resulting prejudice," *State v. Larin*, 233 Ariz. 202, ¶ 6, 310 P.3d 990, 994 (App.2013).

¶ 27 During trial, Welch asked the court to instruct the jury that it had "heard evidence that somebody else had access to the computer" and must acquit if it found that such evidence "raises a reasonable doubt" as to Welch's guilt. The court declined to give the instruction, stating it was concerned "the instruction as proposed would obfuscate the facts in this case" because the evidence showed a mere "possibility that others could have, perhaps, accessed the computer, not that anyone actually did." It further stated that "under the circumstances, this certainly is not the case for that kind of an instruction, nor is it required."

¶ 28 Although Welch agrees that "no Arizona case ha[s] required a third party culpability instruction," he argues on appeal the trial court was not "permanently foreclose[d]" from giving such an instruction and "the facts of this case support[ ]" it. He claims that without the instruction, his "due process rights to a fair trial ... were violated."

¶ 29 A trial court must instruct the jury "on any theory reasonably supported by the evidence." *State v. Moody*, 208 Ariz. 424, ¶ 197, 94 P.3d 1119, 1162 (2004). But the court is not required to give a requested instruction when other instructions adequately cover its substance. *State v. Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d 1006, 1009 (1998). It is established that "[n]o Arizona case has required a third-party culpability instruction" because "the substance of the instruction [is] adequately covered" by the instructions "on the presumption of innocence and the State's burden of proving beyond a reasonable doubt all elements of the crimes charged." *State v. Parker*, 231 Ariz. 391, ¶¶ 55–56, 296 P.3d 54, 68 (2013). So long as the court properly has instructed the jury on the presumption of innocence and the state's burden of proof, the third-party-culpability instruction is not required. *Id.* ¶ 56.

¶ 30 Even assuming, arguendo, that the evidence supported giving a third-party-culpability instruction, the substance of Welch's requested instruction was adequately "covered" by the other instructions. The jury was instructed on the state's burden to prove Welch's guilt beyond a reasonable doubt as to each element of the offenses, the definition of "reasonable doubt," and that Welch had no obligation to prove his innocence or produce any evidence. The jury also was instructed as to what evidence it should consider when determining whether the state had proved Welch guilty beyond a reasonable doubt. These instructions adequately covered the substance of the requested third-party-culpability instruction. *See id.* We see no error in the court's refusal to give Welch's requested instruction.

**Excessive Sentence**

¶ 31 Finally, Welch urges that his sentence of fifty years' imprisonment was "clearly excessive" and in violation of the Eighth Amendment's ban on cruel and unusual punishment. Welch was sentenced pursuant to A.R.S. § 13–705, which prescribes sentences for defendants convicted of committing dangerous crimes against children. Subsection (P)(1)(g) of that section lists "[s]exual exploitation of a minor" as a dangerous crime against children. A person convicted of a dangerous crime against children involving sexual exploitation of a minor must be sentenced to a minimum term of ten years' imprisonment. § 13–705(D). A sentence imposed pursuant to § 13–705(D) for a dangerous crime against children in the first or second degree "shall be consecutive to any other sentence imposed on the person at any time, including child molestation." § 13–705(M).

¶ 32 Because Welch was convicted of five counts of sexual exploitation of a minor, which are dangerous crimes against children, he was sentenced to the minimum term of fifty years' imprisonment. Welch urges this sentence "established an inference of gross disproportionality" and—"in the event his convictions are not reversed"—urges us to reduce his sentence or, in the alternative, vacate his sentence and remand the case for resentencing. "We will not disturb a sentence that is within the statutory range absent an abuse of the trial court's discretion." *State v. Joyner*, 215 Ariz. 134, ¶ 5, 158 P.3d 263, 266 (App.2007). We review de novo whether a sentence constitutes cruel and unusual punishment. *State v. Kasic*, 228 Ariz. 228, ¶ 15, 265 P.3d 410, 413 (App.2011).

¶ 33 The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." In a noncapital setting, this "includes not only punishment that historically has been considered barbaric, but also sentences that are grossly disproportionate to the crime committed." *Kasic*, 228 Ariz. 228, ¶ 13, 265 P.3d at 413, *citing Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). When considering whether a sentence is excessive, a court "first determines if there is a threshold showing of gross disproportionality by comparing 'the gravity of the offense [and] the harshness of the penalty.'" *State v. Berger*, 212 Ariz. 473, ¶ 12, 134 P.3d 378, 381 (2006), *quoting Ewing v. California*, 538 U.S. 11, 28, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (alteration in *Berger*). "If this comparison leads to an inference of gross disproportionality, [we] then test[ ] that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id.*

¶ 34 As Welch acknowledges, our supreme court previously has addressed whether the mandatory sentences for those convicted of sexual exploitation of a minor violate the Eighth Amendment's ban on the infliction of cruel and unusual punishments. In *Berger*, the defendant was convicted of twenty counts of sexual exploitation of a minor under the age of fifteen. *Id.* ¶ 5. The trial court sentenced him to a ten-year prison term, the minimum sentence, for each of the twenty counts, totaling 200 years' imprisonment.[3] *Id.* ¶ 6. Applying the two-part framework enumerated above, our supreme court upheld the sentences, finding that a ten-year prison term is not grossly disproportionate to the offense. *Id.* ¶ 29. In doing so, the court noted that the Eighth Amendment analysis focuses on the sentence for each offense individually and not on the cumulative sentence for all the offenses. *Id.* ¶ 28. The court concluded that twenty consecutive ten-year sentences imposed on a defendant found guilty of twenty counts of sexual exploitation of a minor was not grossly disproportionate to the crimes and thus did not violate the Eighth Amendment. *Id.* ¶¶ 5, 51.

¶ 35 Because we are bound by the decisions of our supreme court, we conclude Welch's sentences were not "clearly excessive" in violation of the ban on cruel and unusual punishment.[4] *State v. Smyers*, 207 Ariz. 314, n. 4, 86 P.3d 370, 374 n. 4 (2004); *see also State v. Long*, 207 Ariz. 140, ¶ 23, 83 P.3d 618, 623 (App.2004) (this court bound by opinions of our highest state court).

## Disposition

¶ 36 For the foregoing reasons, we affirm Welch's convictions and sentences.

---

3. Berger was convicted of violating A.R.S. §§ 13–3551(11) and 3553(A)(2). *Id.* ¶¶ 2, 3. He was sentenced pursuant to § 13–3553(C), which prescribes sentencing under A.R.S. § 13–604.01. That provision was renumbered as A.R.S. § 13–705 in 2008. 2008 Ariz. Sess. Laws, ch. 301, §§ 17, 29. The language of § 13–705 is identical to that of § 13–604.01. *State v. Jones*, 235 Ariz. 501, n. 2, 334 P.3d 191, 193 n. 2 (2014).

4. Welch further argues that his sentences violate article II, § 15 of the Arizona Constitution, which, like the Eighth Amendment, prohibits "cruel and unusual punishment." But "our supreme court has declined to interpret our state constitutional provision more broadly than its federal counterpart," and "[a]ny change in that approach would be in the exclusive purview of that court." *State v. McPherson*, 228 Ariz. 557, ¶ 16, 269 P.3d 1181, 1187 (App.2012); *see also Long*, 207 Ariz. 140, ¶ 23, 83 P.3d at 623.