ESPINOSA, Judge, concurring in part and dissenting in part:
¶48 I fully agree that no Fourth Amendment violation occurred on the facts of this case, and even if there had been, such would have been cured under both the federal and Arizona good-faith doctrines. I write separately, however, because I respectfully disagree with the majority's novel discovery of constitutional protection for internet subscriber information under the Arizona Constitution, particularly in this day and age of constant personal internet connection and dependency, where little, absent extraordinary measures, can confidently be deemed private and shielded.
¶49 In concluding that utilizing otherwise properly obtained third-party ISP subscriber information through a federally authorized subpoena now violates a societal expectation of privacy under article II, § 8 of the Arizona Constitution, my colleagues assert that "internet users generally enjoy-and expect-anonymity in their internet use," citing a 2008 New Jersey case, Reid , 945 A.2d 26. But I am not sure who on Earth, at least anyplace with the ubiquitous and pervasive internet use we enjoy in 2019, would still agree with this largely antiquated notion when so much of modern society is now internet-connected, cloud-dependent, and app-reliant for personal communications, all manner of commercial transactions, 24-7 entertainment, and universal positional tracking. Everyone utilizing cell phones, electronic tablets, laptop computers, smartwatches, and even modern automobiles, not to mention a host of other, less-mobile devices,[16] is subject to pervasive tracking "cookies," unseen meta-data in copiously shared photos and files, and constant geo-location. See In re Nickelodeon Consumer Privacy Litig. , 827 F.3d 262, 266, 269 (3d Cir. 2016) ("We browse the Internet, and the data-collecting infrastructure of the digital world hums along quietly in the background."); see also Carpenter , 138 S. Ct. at 2217 (cell phones create a "detailed and comprehensive record of [a] person's movements"). Much of the resulting information is, and should be, constitutionally protected, see, e.g. , Carpenter , 138 S. Ct. at 2217 (cell phone location data warrants constitutional protection),[17] but basic identifying information in the hands of third parties has never been deemed so under the U.S. Constitution, and for similar reasons should not be broadly *848 shielded in Arizona, see United States v. D'Andrea , 497 F. Supp. 2d 117, 120 (D. Mass. 2007) ("[F]ederal courts [have] uniformly conclude[d] that internet users have no reasonable expectation of privacy in their subscriber information ... and other noncontent data to which service providers must have access.").
¶50 While specific subscriber IP addresses are primarily in the possession of ISPs,[18] the underlying data is received by visited servers and can be matched with identity information by many other third parties.[19] See Weast , 811 F.3d at 748 (IP addresses "widely and voluntarily disseminated in the course of normal use of networked devices"). Such third-party content-neutral information has been found not to warrant constitutional protection by every federal court that has considered the issue. See Caira , 833 F.3d at 806-07 (listing and summarizing numerous federal cases); Perrine , 518 F.3d at 1204-05 (same). This court too, in Welch , noted that IP addresses, universally assigned by third-party ISPs, are not subject to a reasonable expectation of privacy, in a salient comment the majority discounts as "dicta":
Welch has provided no authority for the proposition that internet usage conducted through identifying markers-such as the user's unique IP address-preserve one's expectation of privacy. As Detective Barry testified, "every device that connects to the Internet is assigned an Internet protocol address" that internet providers-such as Cox Communications or Comcast-assign to their customers in order to identify them and verify their status as paying customers. Welch did not argue-either below or on appeal-that he had any expectation of confidentiality from such a provider, and we conclude that any alleged expectation of privacy would be unreasonable.
236 Ariz. 308, n.1, 340 P.3d 387. It is difficult to understand why such content-lacking identifying information should now be more shielded than, for example, personal telephone numbers and related information, which are not so protected, either federally or, presumably still, in Arizona. See Forrester , 512 F.3d at 510, 512 (computer surveillance can be "constitutionally indistinguishable" from the use of a telephone pen register that captures and records numbers dialed from individual phone lines); see also State v. Ring , 200 Ariz. 267, ¶ 18, 25 P.3d 1139 (2001), rev'd on other grounds , 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (pen registers employed to gather evidence against defendant, but their effectiveness "limited, as they simply established that contacts were made without revealing the content of the communications").
¶51 In support of their holding, my colleagues refer to a parade of potential horribles that could flow from the disclosure of an internet user's identity, including where they shop, organizations they belong to, medical information, and other details of a person's life. Indeed, such governmental prying might well warrant constitutional protection and suppression of any such evidence gained through investigating an IP address.[20] But *849 these are red herrings; nothing of the sort is involved here, where only subscriber identity information was legitimately sought by law enforcement for the sole purpose of revealing the source of suspected child pornography distribution. The majority also cites cases relying on the First Amendment to the United States Constitution for its protection of freedom of speech. The criminally perverted "speech" in this case, however, clearly enjoys no such protection. See New York v. Ferber , 458 U.S. 747, 763, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (child pornography "a category of material outside the protection of the First Amendment").
¶52 It is notable that, despite my colleagues' suggestion of a growing trend, today's decision joins what appears to be only one state court in the entire country that has found ISP subscriber information protected under its state constitution. That court did so, however, specifically relying on twenty-five years of expansion of New Jersey privacy rights, rather than out of the blue, as undertaken by the majority here. See Reid , 945 A.2d at 32. The unprecedented and unnecessary impact in Arizona, should this decision endure, may be a significant diminution of law enforcement's ability to efficiently and legitimately investigate serious crimes such as identity theft, cyberattacks, online espionage, theft of intellectual property, fraud, unlawful sale of drugs, human trafficking, and, of course, sexual exploitation of children, through the measured use of federally authorized third-party subpoenas. See 19 U.S.C. § 1509 ; see also 18 U.S.C. § 2703(c), (d).[21]
¶53 But there is another, equally important reason I refrain from joining the majority's novel interpretation of the Arizona Constitution. It is entirely unnecessary for the resolution of this appeal. As our supreme court has observed, "[W]e should resolve cases on non-constitutional grounds in all cases where it is possible and prudent to do so." State v. Korzuch , 186 Ariz. 190, 195, 920 P.2d 312, 317 (1996) ; see Fragoso v. Fell , 210 Ariz. 427, ¶ 6, 111 P.3d 1027 (App. 2005) (same); see also Progressive Specialty Ins. Co. v. Farmers Ins. Co. , 143 Ariz. 547, 548, 694 P.2d 835, 836 (App. 1985) (appellate courts should not give advisory opinions or decide questions unnecessary to disposition of appeal). If ever there was an archetypical example of good-faith conduct by law enforcement officers, this one is it. I fully agree with my colleagues that there was no reason for the officers involved here to believe that their investigation was anything but proper, and no cause to anticipate that an unprecedented legal interpretation of article II, § 8 would find a routine and long accepted investigative tool to be unlawful. The good-faith doctrine being dispositive, there is no reason to explore uncharted and unlikely territory within Arizona's state constitution.
*850 ¶54 In sum, the third-party identifying information at issue in this appeal is far too widely accessible to support a reasonable expectation of privacy. And even were it indeed time to expand the reach of article II, § 8 in this technological direction, the case at hand is not the one for it. Accordingly, I respectfully dissent from the majority's constitutional analysis in paragraphs 14-33, but join in the other sections of the opinion and its disposition of Mixton's appeal.

The popularity of the Internet of Things (IoT) is growing by leaps and bounds, with all manner of household devices and appliances utilizing the same type of Internet Protocol (IP) addresses and subscriber information as involved in this case. See Swaroop Poudel, Note, Internet of Things: Underlying Technologies, Interoperability, and Threats to Privacy and Security , 31 Berkeley Tech. L. J. 997, 997, 1000, 1005, 1008 (2016) (providing definitions of IoT).

Contrary to Judge Eckerstrom's concerns, it is important to keep in mind that only basic identifying information is at issue here. Police obtained neither Mixton's "public physical movements" as in Carpenter , nor his "internet visit[s]," but only the source and "street address" of the illicit material after obtaining the poster's IP address from a single internet site. Access to any of Mixton's "public activities" or "private domain," at least on this record, only came about through the execution of a duly issued search warrant.

ISPs, however, like countless other repositories of individual consumer data, suffer breaches that result in the wholesale theft of private and confidential information, unlike the typical home burglary, with resulting dissemination (or sale) of that information. See, e.g. , Robert Hackett, Verizon's Data Breach Fighter Gets Hit With, Well, a Data Breach , Fortune (Mar. 24, 2016), http://fortune.com/2016/03/24/verizon-enterprise-data-breach/ (contact information of some 1.5 million Verizon customers stolen in data breach); Paige Leskin, The 21 Scariest Data Breaches of 2018 , Bus. Insider (Dec. 30, 2018), https://www.businessinsider.com/data-hacks-breaches-biggest-of-2018-2018-12; David McCandless et al., World's Biggest Data Breaches & Hacks , Information is Beautiful, https://www.informationisbeautiful.net/visualizations/worlds-biggest-data-breaches-hacks/ (last updated Apr. 1, 2019).

Saul Hansell, Google Says I.P. Addresses Aren't Personal , N.Y. Times: Bits (Feb. 22, 2008), https://bits.blogs.nytimes.com/2008/02/22/google-says-ip-addresses-arent-personal/ (IP addresses alone not "personal information," but once user registers for any online service, IP address can be associated with user's identity and everything else the user does online).

To fortify its conclusion, the majority miscasts my position as requiring citizens to "abandon any claim to privacy in their internet activities" to avoid "abusive governmental intrusions." But, as already noted, that dire specter invokes a far different factual scenario and issue, well beyond what occurred in this case. See Velasco v. Mallory , 5 Ariz. App. 406, 410-11, 427 P.2d 540 (1967) (opinions rendered should deal with specific facts at issue and not anticipate "troubles which do not exist" and imagined scenarios that "may never exist" in the future); see also Golden v. Zwickler , 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) (in adjudicating constitutional questions, " 'concrete legal issues, presented in actual cases, not abstractions' are requisite" (quoting United Pub. Workers of Am. (C.I.O.) v. Mitchell , 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947) )).

My colleagues posit that "police could have easily obtained a search warrant in this case." But that sidesteps the question of whether law enforcement should have to resort to such formal and burdensome means in the first place, particularly during the preliminary stages of an investigation. See Fernandez v. California , 571 U.S. 292, 306-07, 134 S.Ct. 1126, 188 L.Ed.2d 25 (2014) ("Even with modern technological advances, the warrant procedure imposes burdens on the officers who wish to search [and] the magistrate who must review the warrant application."); California v. Acevedo , 500 U.S. 565, 586-87, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (White, J., dissenting) ("Our decisions have always acknowledged that the warrant requirement imposes a burden on law enforcement."). Moreover, it is not necessarily a given that a neutral magistrate will always find sufficient probable cause to issue a search warrant based chiefly on the capture of an IP address. And that Mixton might have been identified through other means, while illustrating the very minimal privacy interest at hand, should not be a reason for undercutting prudent and well-established police procedures that do not infringe on constitutional rights. Cf. Kyllo v. United States , 533 U.S. 27, 35 n.2, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (that police might have obtained evidence through other means not a factor in Fourth Amendment analysis).