Filed 1/28/26  P. v. Hartman CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TODD CHRISTIAN HARTMAN,<br><br>    Defendant and Appellant. | G064489<br><br>(Super. Ct. No. 17NF2189)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge. Affirmed in part and reversed in part. Remanded with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury found Todd Christian Hartman guilty of eight counts of child molestation, and one count of possessing child pornography. The jury also found true various sentencing enhancements under California's "One Strike" sentencing scheme. (Pen. Code, § 667.61.) [1] The trial court sentenced Hartman to a determinate prison term of four years and four months, followed by an indeterminate term of 120 years to life.

Hartman claims the police violated his constitutional rights by remotely searching his home computer before obtaining a search warrant. We disagree. Under the Fourth Amendment, a "search" is a governmental intrusion into an area where a person has a reasonable expectation of privacy. (*Katz v. United States* (1967) 389 U.S. 347, 350 (*Katz*).) Here, Hartman had no reasonable expectation of privacy because he possessed child pornography files on his computer that were remotely accessible to the public (and to the police) through a peer-to-peer file sharing network.

Hartman also claims that as to three of the child molestation counts the jury was not properly instructed and did not find true the multiple victim allegations of the One Strike law. We disagree. The jury was properly instructed, and the jurors found true the relevant One Strike allegations.

Finally, Hartman claims that as to one of the counts the trial court improperly imposed an upper term sentence (three years). We agree. The aggravating facts were found true by the judge rather than by the jury. Thus, we shall vacate the upper term sentence. On remand, the People may elect to retry the aggravating facts; if not, the court may proceed to resentencing. In all other respects, the judgment is affirmed.

---

[1] Further undesignated statutory references are to the Penal Code. We shall also largely omit the word subdivision or its abbreviation.

# I.

## FACTS AND PROCEDURAL BACKGROUND

In December 2009, Hartman committed sex offenses against Stephanie P. (then 12 years old) and Alexis C. (then 14 years old). Hartman's crimes were reported to the police in January 2010, but the district attorney did not file charges at that time.

Six years later, in an unrelated child pornography investigation, the police found lewd photos of sisters Elizabeth F. (then 11 years old) and Sonja F. (then nine years old) on Hartman's computer. Further investigation revealed Hartman had committed sex offenses against both sisters starting when they were under 10 years old.

*Stephanie P. and Alexis C.*

On December 29, 2009, Alexis was sleeping over at Stephanie's grandmother's home in Fullerton. There were four adults present in the home. At about 11:00 p.m., Alexis and Stephanie were alone in the family room with Hartman, a family friend. Hartman closed the curtains, which a neighbor later testified was unusual. Hartman was on a recliner and asked the girls to sit on his lap.

Hartman began touching Alexis on her back, stomach, shoulders, and chest. Hartman slipped his hand under her pants. Although Alexis tried to stop him, Hartman rubbed Alexis's vagina. Alexis then got off the recliner and went to a nearby couch. Hartman unbuttoned Stephanie's pants and slid his hand down inside. Hartman's hand went under Stephanie's underwear and made contact with her vagina. Stephanie yelled at Hartman to stop, and he pulled his hand out. Hartman then went to the nearby couch while Stephanie fell asleep on the recliner.

On the couch, Alexis had wrapped a blanket around herself, which Hartman forcibly removed. Hartman kissed Alexis's neck, chest, and stomach, and again rubbed her bare breast and nipples. At one point, Alexis felt Hartman's erect penis rubbing against her thigh. Eventually, Alexis fell asleep, and the following morning "we pretended that nothing happened." Alexis was embarrassed and afraid.

On December 30, 2009, Hartman again stayed the night at Stephanie's grandmother's house, which was unexpected. Hartman said that his allergy medication prevented him from driving home. That evening, similar sexual conduct again occurred in the family room. Hartman slipped his hand inside Alexis's underwear, and he touched the outside of her vagina with his fingers. Stephanie did not remember anything about what happened on the second night.

*Elizabeth F. and Sonja F.*

In 2010, Elizabeth was about six years old, and her sister Sonja was about two years younger. Hartman was a trusted friend of the family, who attended the same church in Anaheim, and would often visit the family home over a period of years. Although Hartman was much older than Elizabeth, she thought of him as her friend. While Elizabeth was sitting on his lap, Hartman repeatedly touched her chest and nipples under her clothes. Elizabeth estimated that this occurred 100 times. Hartman also repeatedly touched the inside of Elizabeth's vagina under her clothes. Elizabeth estimated that this occurred 150 times, and most of those incidents occurred when she was under 10 years old.

Sonja also occasionally sat on Hartman's lap while he tickled her, even though there was a family rule prohibiting the girls from having

4

physical contact with Hartman. Sometimes Sonja asked Hartman to stop, but he did not listen. Hartman took pictures of Sonja when she was about eight years old. In one picture Sonja had her legs up in the air. Sonja was unaware that Hartman had taken the "inappropriate" picture. Another picture showed Sonja sitting on the couch in her living room with Hartman, with the camera zoomed in on her vaginal area.

*Police Investigation*

In February 2015, Anaheim Police Detective David Syvock filed an affidavit in support of a search warrant. Syvock averred that as part of an ongoing multi-agency child pornography investigation, he used law enforcement software (Peer Spectre) to identify Internet Protocol (IP) addresses linked to EDonkey2000, a peer-to-peer file sharing program. Syvock stated that users of EDonkey2000 download the program onto their computers for the purpose of sharing child pornography.

Detective Syvock had identified two IP addresses that displayed six video files containing known and verified images of child pornography. By contacting Hartman's internet service provider, Time Warner Cable, Syvock linked the two IP addresses to Hartman's home address.

A magistrate approved the search warrant, which allowed the police to seize and search all electronic devices located within Hartman's home. The police executed the warrant and seized Hartman's computer and hard drive, which contained thousands of child pornography files, including the video files that Detective Syvock had identified in the affidavit. The police also found lewd pictures of Elizabeth and Sonja on Hartman's computer.

*Court Proceedings*

The People filed a nine-count information charging Hartman with: 1) sexual penetration of a child 10 years of age or younger (Elizabeth); 2) sexual penetration of a child 10 years of age or younger (Elizabeth); 3) lewd act upon a child under the age of 14 years old (Elizabeth); 4) lewd act upon a child under the age of 14 years old (Elizabeth); 5) lewd act upon a child under the age of 14 years old (Sonja); 6) lewd act upon a 14-year-old child (Alexis); 7) lewd act upon a 14-year-old child (Alexis); 8) lewd act upon a child under the age of 14 years old (Stephanie); and 9) possession of child pornography. The People further charged two multiple victim (One Strike) allegations.

Prior to a jury trial, Hartman filed a motion to suppress evidence and a motion to quash the search warrant (the relevant proceedings will be summarized in the discussion section of this opinion).

A jury found Hartman guilty of the charged crimes and found true the allegations. The court imposed an aggregate sentence of 120 years to life, plus four years and four months.

II.

DISCUSSION

Hartman claims: A) the trial court erred by denying his motion to suppress evidence and to quash the warrant; B) the jury was not properly instructed and did not find true certain One Strike allegations; and C) the court erred by imposing an upper term sentence without a jury finding.

*A. Motion to Suppress Evidence and Quash the Warrant*

Hartman claims that "the police illegally hacked into appellant's computer, in violation of appellant's Fourth Amendment rights, in order to

6

support the affidavit for the search warrant." (Capitalization omitted.) We disagree. Hartman had no reasonable expectation of privacy given that the child pornography files on his computer were readily accessible to the public (and to the police) through a peer-to-peer child pornography file sharing network (EDonkey2000).

In this part of the discussion, we shall: 1) review the relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the relevant legal principles as applied to the facts in this case.

### 1. Relevant Legal Principles

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.)

A "search" is a governmental intrusion into an area where a person has a reasonable expectation of privacy. (*Katz v. United States, supra,* 389 U.S. at p. 350.) Consequently, there is no "search" within the meaning of the Fourth Amendment unless a person had a reasonable expectation of privacy, and that expectation was violated by an unreasonable governmental intrusion. (*Katz, supra,* 389 U.S. at p. 353.) "What constitutes a 'reasonable' expectation of privacy depends on the circumstances . . . ." (*In re Deborah C.* (1981) 30 Cal.3d 125, 137.)

A defendant may move to suppress evidence obtained as the result of a search on the ground that there was not probable cause for the issuance of the warrant. (§ 1538.5(a)(1)(B)(iii).) If the defendant moves to quash the warrant, "the court should proceed to determine whether, under

the 'totality of the circumstances' presented in the search warrant affidavit . . . there was 'a fair probability' that contraband or evidence of a crime would be found in the place searched pursuant to the warrant." (*People v. Hobbs* (1994) 7 Cal.4th 948, 975.)

"The magistrate's determination of probable cause is entitled to deferential review." (*People v. Kraft* (2000) 23 Cal.4th 978, 1041.) ""'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants.'"" (*People v. Weiss* (1999) 20 Cal.4th 1073, 1082–1083.)

Generally, evidence obtained as a result of an illegal search may not be used to establish probable cause for a search warrant. (*People v. Roberts* (1956) 47 Cal.2d 374, 377.) In reviewing whether the trial court properly denied a suppression motion made on the ground that the evidence used to support the warrant was obtained from an illegal search, appellate courts apply a well-established standard of review: "'We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.'" (*People v. Maury* (2003) 30 Cal.4th 342, 384.)

Ordinarily, under the exclusionary rule, evidence obtained as a result of an illegal search must be excluded from the prosecution's case-in-chief. (*United States v. Leon* (1984) 468 U.S. 897, 906.) However, the Supreme Court has held that the exclusionary rule does not apply to evidence obtained by the police when they acted in objective reasonable reliance on a valid search warrant issued by a neutral magistrate, even if the warrant was later found to be unsupported by probable cause. (*Id.* at pp. 919–920.)

8

## 2. Trial Court Proceedings

On April 25, 2024, Hartman filed a motion "to suppress evidence observed and collected by remote digital access . . . in violation of the defendant's . . . Fourth Amendment rights, and to suppress all evidence generated thereafter that was the fruit of that poisonous tree." Hartman alleged that prior to obtaining a warrant, "the police used proprietary software to exploit another program installed on Defendant's computer and to thereby remotely and surreptitiously search the contents of its hard drive, select media files and other data thereon, and download copies of those files directly to law enforcement machines. The police did not seek or receive any judicial approval for their actions."

On April 29, 2024, Hartman filed a supplemental motion to quash the search warrant. Hartman claimed: "A search warrant obtained on information acquired by an illegal search is itself illegal." Hartman alleged Detective Syvock "conducted illegal searches of Defendant's personal property and data by remote access to machines in his home, then included that illegally searched and seized data as the sole justification for the search warrant affidavit."

Attached to the motion was a copy of Detective Syvock's affidavit in support of the warrant (the statement of probable cause). After listing his training and experience, Syvock averred, in part:

"Peer-to-Peer networks are frequently used in the trading of child pornography. I know that one such network is known as the Edonkey2000. The Edonkey2000 network is being used to trade digital files, including still images and movie files, depicting child pornography."

"During the default installation of the EDonkey2000 software program, settings are established which configure the host computer to share

files. A feature known as browsing may also be turned on. Depending upon the client program used, a user may have the ability to reconfigure some of these during installation or after the installation . . . . Typically, the Peer-to-Peer software can be configured to establish the location of one or more directories of folders whose contents (files) are made available for distribution or sharing to other EDonkey2000 peers."

"[A]n investigator is able to compare the EDonkey2000 signatures of files being shared on the network to previously identified child pornography EDonkey2000 signatures. Using . . . publicly available EDonkey2000 software, an investigator can select the EDonkey2000 signature of a known file as they attempt to locate and download the known file on the EDonkey2 network."

"By receiving either a browsed file list or portions of a download file from a specific IP address, the investigator can conclude that a computer, in his jurisdiction, is running a EDonkey2000 software and is processing, receiving and/or distributing specific and known visual depictions of child pornography."

"Peer Spectre reads the publicly available advertisement from computers that are identifying child sexual abuse images available, for distribution, in a consistent and reliable manner." "Peer Spectre automates the search process but conducts and reports the search in the same manner that has previously been done by individual investigators. Peer Spectre does not report details which are not also discoverable by the general public using Internet available software."

At the hearing on the motion to suppress evidence and quash the warrant, Detective Syvock testified that a version of the Peer Spectre software is also known as Shareaza LE (law enforcement). Syvock testified

10

that by using the law enforcement software prior to obtaining the warrant, he downloaded six child pornography publicly available video files associated with two IP addresses, which traced back to Hartman's home address through Hartman's internet service provider Time Warner Cable.

During his testimony, Detective Syvock was asked, "What's a hacker?" Syvock said, "My understanding of a hacker is somebody that hacks other computers to gain access to information that is not readily available to the public." Syvock testified that he did not believe that the law enforcement software that he used meets this definition because it "found files that were being [made] readily available."

During the hearing, a forensic computer examiner, Michele Bush, testified on behalf of the defense. Bush had examined Hartman's computer, and located the six child pornography files that had been identified in Detective Syvock's search warrant affidavit. Bush said that the six video files were located in a single folder associated with peer-to-peer software (eMule), along with over 4,000 other files (child pornography images and videos). Bush testified that eMule operates within the EDonkey2000 network.

Bush said that two of the six child pornography video files identified by Detective Syvock were marked as available for sharing, while four of the files had not been marked as available for sharing. Based on this, Bush opined that the law enforcement software used by Syvock was potentially able to access (hack) private files on Hartman's computer. However, Bush testified that the four files marked as not available for sharing were likely downloaded from the peer-to-peer file sharing network; therefore, the four files may have been accessible to the public at some point.

At the end of the hearing, Hartman's counsel argued the remote search of Hartman's computer through the law enforcement software was

11

equivalent to entering his home: "They kicked the door in and went walking around and looked all over the place and found these things." The trial court disagreed and stated: "It's a legal search because they are using a public peer-to-peer website."

After further argument, the trial court ruled:

"All right. Well, I don't believe there's any expectation of privacy in the information that was retrieved in this case.

"The defendant utilized public sharing peer-to-peer websites, the software, the eDonkey, eMule, and I think there were a couple others that were mentioned. In any event, all [the law enforcement software] did is search for IP addresses and utilize those public sharing programs, [to see] whether there was files that fit the description they were looking for, namely child pornography. [¶] And when [the law enforcement software] did find files that are associated with utilizing this public network, it found out where those files were and which IP addresses they were associated with and provided those IP addresses to the police, who then followed up on that.

"So in utilizing . . . these peer-to-peer sharing websites, operating in those areas, I don't think there's any expectation of privacy. [¶] As far as the—especially as to two of the files were actually marked for sharing. There's definitely no expectation of privacy in [those] particular file[s]. And I don't agree with [defense counsel's] kicking down the door routine, . . . I don't think it would apply to this type of case where you're looking for files that are being associated back and forth or traded back and forth, because these files were traded back and forth on the Internet at some point.

"Even if I was to exclude four of those [child pornography files] . . . there would still be sufficient probable cause to issue the search warrant. [¶] So the motion to suppress is denied as well as the motion to quash."

12

### 3. Application and Analysis

"Computer users generally have an objectively reasonable expectation of privacy in the contents of their personal computers." (*People v. Evensen* (2016) 4 Cal.App.5th 1020, 1026 (*Evensen*).) "But there are exceptions . . . , and one of them is that computer users have no reasonable expectation of privacy in the contents of a file that has been downloaded to a publicly accessible folder through file-sharing software." (*Ibid.*)

Law enforcement software that remotely searches publicly available peer-to-peer file sharing networks for child pornography does not violate a computer user's reasonable expectation of privacy. (*Evensen, supra,* 4 Cal.App.5th a pp. 1028–1029.) In *Evensen*, the police used law enforcement software to search publicly available peer-to-peer file sharing networks in order to identify "known and verified digital files of child pornography." (*Id.* at p. 1024.) Defendant had "used a peer-to-peer network called eDonkey, which he accessed through a program called eMule." (*Id.* at p. 1023.) Using the law enforcement software, the police identified over 200 child pornography files that returned to an IP address, which eventually traced back to defendant. (*Id.* at p. 1024.) After obtaining a warrant, the police searched defendant's computer, finding over 200 video files and images of child pornography. (*Id.* at p. 1025.) Defendant filed a motion to suppress the evidence, contending "that the use of the [law enforcement software] amounted to an unconstitutional search." (*Ibid.*) The trial court denied the motion and the appellate court affirmed. (*Id.* at pp. 1025, 1030.) The Court of Appeal rejected defendant's Fourth Amendment claim, holding that defendant "had no reasonable expectation of privacy *in his shared folder* associated with the peer-to-peer network." (*Id.* at p. 1030, italics added.)

Here, the facts are remarkably similar to the facts in *Evensen*,

and our analysis reaches the same conclusion. The evidence was undisputed that Hartman had downloaded the EDonkey2000 program onto his home computer. According to Detective Syvock, EDonkey2000 is a peer-to-peer file sharing network utilized to process, receive, and/or distribute depictions of child pornography among its peers (users). Syvock testified that by utilizing law enforcement software (Peer Spectre/Shareaza LE), which identified known and verified child pornography, Syvock was able to remotely access six child pornography files on Hartman's computer that were located within *a shared folder* associated with the EDonkey2000 network. Syvock then traced the IP addresses to Hartman's home address.

We find that the facts and information in the affidavit established probable cause for the warrant. That is, there was probable cause to believe that Hartman's computer contained evidence that he had committed a felony offense, namely the possession of child pornography.

Further, just as in *Evensen,* because Hartman utilized the EDonkey 2000 peer-to-peer child pornography file sharing program that was remotely accessible to the public (and to the police), we find that Hartman "had no reasonable expectation of privacy *in his shared folder* associated with the peer-to-peer network." (See *Evensen*, *supra*, 4 Cal.App.5th at p. 1030, italics added.) Thus, we affirm the trial court's ruling, which denied Hartman's motion to suppress evidence and quash the search warrant.

Hartman argues that during the hearing on the motions he "presented uncontroverted evidence that 4 of the 6 files that Syvock downloaded were not being publicly shared." We disagree.

It is true that the defense expert testified that four of the six child pornography video files identified by Detective Syvock in his affidavit were marked as not publicly available for sharing. But that defense evidence

was controverted by Syvock's testimony, as well as his sworn affidavit, in which he averred that all six files within the folder on Hartman's computer were publicly available through the EDonkey2000 peer-to-peer child pornography file sharing program.

In any event, assuming Hartman had marked four of the six files as unavailable for sharing, two of the files were undisputedly marked as available for sharing. Further, even if Hartman may have had a *subjective* expectation of privacy in the four files he purportedly marked as unavailable for sharing, we do not think his expectation was *objectively* reasonable.

To determine whether a person's expectation of privacy is reasonable, courts employ a two-part test: first, the person must demonstrate an actual, *subjective* expectation of privacy; second, society must recognize that expectation as *objectively* reasonable. (*People v. Ayala* (2000) 23 Cal.4th 225, 255.)

Detective Syvock testified that the only apparent purpose of the EDonkey2000 peer-to-peer file sharing program was to share and distribute child pornography files among its users, a patently illegal enterprise. In short, we do not think that it was *objectively* reasonable for Hartman to expect that any sort of privacy protections in the EDonkey2000 program would be scrupulously honored or adhered to, either by the child pornography program itself, or by its other users. (Compare *People v. Daggs* (2005) 133 Cal.App.4th 361, 364–365 [no reasonable expectation of privacy in cell phone defendant "locked" but dropped in a store during a robbery].)

Finally, even if the search warrant lacked probable cause, the suppression of the evidence under the exclusionary rule is not required. This is because Detective Syvock and the other officers who seized and examined Hartman's computer acted in apparent good faith reliance on a facially valid

search warrant signed by a neutral magistrate. (See *United States v. Leon, supra,* 468 U.S. at pp. 919–920.)

To reiterate and conclude, we find no violation of Hartman's Fourth Amendment rights.

## B. One-Strike Sentencing

Hartman claims: "This court should reduce the terms on counts 3, 4 and 5 from 25 years to life to 15 years to life because the jury was not instructed on, and did not specifically find true, the [One Strike] allegation." (Capitalization and boldface omitted.) We disagree. The record reveals that jury was properly instructed, and the jurors found the relevant One Strike allegations true beyond a reasonable doubt.

A claim of instructional error is reviewed de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.) Hartman's remaining claims involve pure legal questions, which we also review de novo. (See, e.g., *People v. Garcia* (2016) 62 Cal.4th 1116, 1122.)

In this part of the discussion, we shall: 1) review the relevant legal principles; 2) summarize the trial court proceedings; and 3) analyze the relevant legal principles as applied to the facts in this case.

### 1. Relevant Legal Principles

The One Strike law is an alternative sentencing scheme for sex offenders that generally requires a court to impose a life sentence. (§ 667.61 (a) & (b).) The law applies when a defendant is convicted of a specified sex offense (e.g., sodomy, lewd or lascivious act upon a minor), and the defendant committed the offense under specified circumstances (e.g., the defendant kidnapped the victim during the commission of the specified sex offense, the

16

defendant was convicted of committing a specified sex offense against more than one victim in the present case). (§ 667.61 (c)(8), (e)(1) & (4).)

The One Strike law states: "The penalties provided in this section shall apply only if the existence of any [specified] circumstance . . . is alleged in the accusatory pleading . . . , and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61 (o).) That is, the circumstance must ordinarily be pleaded, proved, and found true by the trier of fact. (*People v. Mancebo* (2002) 27 Cal.4th 735, 743.)

Ordinarily, the One Strike law calls for a default minimum sentence of 15 years to life. (§ 667.61 (b) & (e).) But a minimum One Strike sentence may be 25 years to life, or life without the possibility of parole, depending upon the specified sex offenses and circumstances. (§ 667.61 (j)(1).) In cases where (1) a victim is under the age of 14, (2) the specified sex offense is lewd and lascivious conduct, and (3) the multiple victim circumstance is pleaded and proved, a minimum sentence of either 15 years to life or 25 years to life may be alleged. (§ 667.61 (b), (e) & (j)(2).)

The One Strike multiple victim circumstance applies when the "offenses are prosecuted 'in the present case or cases.'" (*People v. Stewart* (2004) 119 Cal.App.4th 163, 171.) The trial court may not impose a sentence under the One Strike law relying on the multiple victim circumstance unless the jury has specifically made a finding that this circumstance has been proven true. (*People v. Mancebo, supra,* 27 Cal.4th at p. 743.)

"'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence . . . .'" (*People v. Souza* (2012) 54 Cal.4th 90, 115.) This sua sponte duty includes "a duty to instruct on the elements of the one strike circumstances." (*People v. Jones* (1997) 58 Cal.App.4th 693, 709.) However, "at least some of the jury's

17

findings on the one strike circumstances [may] necessarily [have] followed from its findings on other issues." (*Ibid.*)

### 2. Trial Court Proceedings

Again, the People filed a nine-count information charging Hartman with: 1) sexual penetration of a child 10 years of age or younger (Elizabeth); 2) sexual penetration of a child 10 years of age or younger (Elizabeth); 3) lewd act upon a child under the age of 14 years old (Elizabeth); 4) lewd act upon a child under the age of 14 years old (Elizabeth); 5) lewd act upon a child under the age of 14 years old (Sonja); 6) lewd act upon a 14-year-old child (Alexis); 7) lewd act upon a 14-year-old child (Alexis); 8) lewd act upon a child under the age of 14 years old (Stephanie); and 9) possession of child pornography.

The information also included two separate multiple victim (One Strike) allegations:

"As to Count (s) 3, 4 and 5, it is further alleged pursuant to Penal Code sections 667.61 (j)(2) / (e)(4), that in the commission of the above offense, defendant TODD CHRISTIAN HARTMAN committed an offense specified in Penal Code section 667.61 (c) against more than one victim *and the victim was a minor under 14 years of age.*

"As to Count(s) 3, 4, 5 and 8, it is further alleged pursuant to Penal Code sections 667.61 (b)/(e) that in the commission of the above offense defendant TODD CHRISTIAN HARTMAN committed an offense specified in Penal Code section 667.61 (c) against more than one victim." (Italics added).

The trial court instructed the jury: "If you find the defendant guilty of two or more sex offenses, as charged in Counts 3, 4, 5 and 8, you must then decide whether the People have proved the additional allegation

18

that those crimes were committed against more than one victim in this case. The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved." (CALCRIM No. 3181.)

The jury found Hartman guilty as to all of the charged counts, including counts 3, 4, 5, and 8 (lewd act upon a child under the age of 14). As to each of these counts, the jury also signed the following verdict forms:

"We, the Jury in the above-entitled action, having now found the Defendant, TODD CHRISTIAN HARTMAN, GUILTY of the crime of LEWD ACT UPON A CHILD UNDER 14 as charged in Count[s] [3, 4, 5, and 8] of the Information, do further find the other allegation alleged; TO WIT: that Defendant, TODD CHRISTIAN HARTMAN, committed an offense specified in Penal Code section 667.61 (c) against **more than one victim** pursuant to Penal Code section 667.61 (b)/(e) and 667.61 (j)(2)/(e)(4) to be: [¶] TRUE."

The trial court imposed a sentence of 120 years to life, plus four years and four months: 15 years to life as to counts one, two, and eight; 25 years to life as to counts three, four, and five; three years as to count six (upper term), eight months as to count seven (one-third the midterm), and eight months as to count nine (one-third the midterm).[2]

### 3. *Analysis and Application*

In this case, the People alleged two multiple victim (One Strike) allegations in the information. As to counts three, four, and five, the People

---

[2] The designated sentence for sexual penetration of a minor 10 years old or younger (counts one and two) is 15 years to life, irrespective of the One Strike law. (§ 288.7 (b).)

alleged a specified sex offense (lewd and lascivious conduct upon a child under the age of 14), and a multiple victim circumstance against victims who were under the age of 14 (Elizabeth and Sonja). (§ 667.61 (j)(2).) As to counts three, four, five, and eight, the People alleged a specified sex offense (lewd and lascivious conduct upon a child under the age of 14), and a multiple victim circumstance against victims without respect to their ages (Elizabeth, Sonja, and Stephanie).[3] (§ 667.61 (b) & (e).)

The trial court instructed the jury as to the alleged multiple victim circumstances as to counts three, four, five, and eight using the pattern jury instruction. (CALCRIM No. 3181.) The jury found true as to each allegation (counts three, four, five, and eight) that Hartman committed the crime of lewd and lascivious conduct against a child under the age of 14, and that the crimes were committed against multiple victims. As to counts three, four, and five the court imposed a 25 years to life sentence, and as to count eight, the court imposed a 15 years to life sentence.

In sum, we find the trial court properly instructed the jury as to the multiple victim (One Strike) allegations, and they were properly pleaded and proved. (See *People v. Mancebo*, *supra*, 27 Cal.4th at p. 743.) Thus, we find no errors, and we affirm the judgment as to any One Strike issues.

Hartman argues: "Appellant's jury was never given any instructions on the section 667.61, subdivision (j)(2) allegation." We disagree. Hartman's argument is belied by the record.

---

[3] This pleading allowed the trial court to choose between a 15 years to life sentence as to counts three (Elizabeth), four (Elizabeth), and five (Sonja), or a 25 years to life sentence as to those counts. Based on the pleading, the court could only impose a 15 years to life sentence as to count eight (Stephanie). It is unclear why the People chose not to allege a 25 years to life sentence as to count eight (Stephanie was also under the age of 14).

Section 667.61, subdivision (j)(2) provides: "A person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life."

While the official pattern jury instruction used by the trial court did not duplicate the precise language in section 667.61, subdivision (j)(2), the court instructed the jurors in layman's terms: "If you find the defendant guilty of two or more sex offenses, as charged in Counts 3, 4, 5 and 8, *you must then decide whether the People have proved the additional allegation that those crimes were committed against more than one victim in this case.*" (CALCRIM No. 3181, italics added.)

The specified sex offenses in section 667.61 subdivision (c) include the charges alleged in counts three, four, five, and eight: a lewd or lascivious act upon a child under the age of 14. (§ 288 (a).) And the specified circumstances subdivision (e) include whether those crimes were committed "against more than one victim." (§ 667.61 (e)(4).) Thus, we find that the trial court effectively instructed the jury on section 667.61, subdivision (j)(2), and necessarily fulfilled its "duty to instruct on the elements of the one strike circumstance." (See *People v. Jones, supra*, 58 Cal.App.4th at p. 709 ["at least some of the jury's findings on the one strike circumstances [may] necessarily [have] followed from its findings on other issues"].)

Hartman also argues "the jury never made a specific finding on counts 3, 4 or 5 that appellant committed an enumerated sex offense under a specified circumstance 'upon a victim who is a child under 14 years of age' within the meaning of section 667.61, subdivision (j)(2)." We disagree. Hartman's argument is again belied by the record.

21

By signing the verdict forms for the One Strike allegations as to counts three, four, and five, the jury made a specific finding that Hartman was "guilty of the crime of lewd act upon a child under 14 as charged" and that Hartman committed the specified sex offense "against more than one victim." (Capitalization & boldface omitted.)

Finally, we note that in the respondent's brief the Attorney General argued at some length that Hartman was provided fair notice in the information that he was subject to a 25 years to life sentence. (See *In re Vaquera* (2024) 15 Cal.5th 706.) However, in his reply brief, Hartman confirmed that he "does not allege a pleading or a fair notice problem regarding the section 667.61, subdivision (j)(2) allegation."

To reiterate and conclude, we find the trial court made no errors as far as any aspect of the multiple victim (One Strike) allegations.

## C. Upper Term Sentence as to Count Six

Hartman claims: "This court should reverse and remand for resentencing because the trial court erred, in violation of Appellant's constitutional and statutory rights, by imposing the upper term on count 6 without any aggravating factor having been stipulated to by appellant, found true by a jury, or found true by the trial court after a valid jury trial waiver." (Capitalization & boldface omitted.) We agree.[4]

---

[4] Hartman also claims the trial court committed various errors regarding his fines and fees, and the court did not properly record them in the abstract of judgment. But given our disposition, we need not address these claims. (See *People v. Nilsson* (2015) 242 Cal.App.4th 1, 34 [remand for resentencing includes the imposition of "fines, fees, and restitution"].)

22

In 2007, the United States Supreme Court held that California's determinate sentencing law violated a defendant's Sixth Amendment right to a jury trial. (*Cunningham v. California* (2007) 549 U.S. 270, 293.) The former determinate sentencing law generally allowed a judge, rather than a jury, to find true various aggravating facts that could be used to elevate a defendant's sentence from the default midterm to an upper term sentence. (Former § 1170, subd. (b), enacted by Stats. 2007, ch. 3, § 2.)

In 2022, the Legislature ultimately amended the determinate sentencing law: "The court may impose a sentence exceeding the middle term *only when* there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term *and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.* . . . . Trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170 (b)(2); Stats. 2021, ch. 731, § 1.3, italics added.)

The California Supreme Court later held that when a trial court imposes an upper term sentence by relying on aggravating facts not proven in compliance with section 1170 (b)(2), the sentence must be vacated, and the matter must be remanded for resentencing unless the reviewing court finds that "the omission of a jury trial was harmless beyond a reasonable doubt as to *every aggravating fact* the trial court used to justify an upper term sentence." (*People v. Lynch* (2024) 16 Cal.5th 730, 744–775, italics added.)

Here, the trial court sentenced Hartman to determinate terms on counts six, seven, and nine. The court imposed the upper term (three years)

as to count six (a lewd act committed upon Alexis on December 29, 2009). At the sentencing hearing, the court relied on two aggravating facts to impose the upper term sentence: 1) the court found that Hartman abused a position of trust, and 2) the court found that the crime "require[d] planning and sophistication on the part of Mr. Hartman."

In this case there was a jury trial, but the aggravating facts were not alleged in the information, they were not found true by the jury, and they were not stipulated to by Hartman. Therefore, we must vacate the upper term sentence as to count six and remand for resentencing. (See § 1170 (b)(2); see also *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].)

The Attorney General concedes the error, and concedes that the error was prejudicial under the federal constitutional standard of review. (See *People v. Wiley* (2025) 17 Cal.5th 1069, 1087.)

However, the Attorney General argues Hartman forfeited this claim because he did not object to the error during the sentencing hearing. We agree that Hartman has forfeited this claim. However, we will exercise our discretion and not apply the forfeiture rule because it will "have the effect of converting an appellate issue into a habeas corpus claim of ineffective assistance of counsel for failure to preserve the question by timely objection."[5] (*People v. Butler* (2003) 31 Cal.4th 1119, 1128.)

---

[5]For this reason, in a separate order, we are summarily denying Hartman's related petition for a writ of habeas corpus, which alleges ineffective assistance by his trial counsel for failing to object to his upper term sentence at the sentencing hearing (G065044).

## III.

## DISPOSITION

Hartman's upper term sentence (three years) as to count six is vacated. On remand, the People may elect to retry the aggravating facts in conformity with section 1170 (b)(2); if not, the court may proceed to a full resentencing hearing. In all other respects, the judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.